**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| MARIO MALPICA | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )     CIVIL ACTION NO. _____ |
| STACEY A. KINCAID, | ) |
| | )     COMPLAINT |
| Serve: | ) |
| Stacey A. Kincaid | )     JURY TRIAL DEMAND |
| Fairfax County Sheriff's Office | ) |
| 4110 Chain Bridge Road | ) |
| Fairfax, VA 22030 | ) |
| | ) |
| *In her official capacity*; | ) |
| | ) |
| EMIL GHALI, | ) |
| | ) |
| Serve: | ) |
| Emil Ghali | ) |
| 9408 Wallingford Drive | ) |
| Burke, VA 22015 | ) |
| | ) |
| *In his individual and official capacity*; | ) |
| | ) |
| | ) |
| JAMES SANTMYERS, | ) |
| | ) |
| Serve: | ) |
| James Santmyers | ) |
| 229 Andrews Road | ) |
| Front Royal, VA 22630 | ) |
| | ) |
| *In his individual and official capacity*; | ) |
| | ) |
| THERESA EUGENE, | ) |
| | ) |
| Serve: | ) |
| Theresa Eugene | ) |
| 7249 King William Street | ) |
| Warrenton, VA 20187 | ) |
| | ) |

*In her individual and official capacity*;    )
                                    )
           Defendants.                 )
                                    )

## COMPLAINT

Plaintiff Mario Malpica, by counsel, and for his Complaint against Fairfax County Sheriff Stacey A. Kincaid, Emil Ghali, James Santmyers, and Theresa Eugene, states as follows:

1.     This is an action for damages under 42 U.S.C. § 1983 ("Section 1983") stemming from Defendants' treatment of Mario Malpica ("Plaintiff" or "Mr. Malpica") during his incarceration at the Fairfax County Adult Detention Center. Mr. Malpica seeks damages for Defendants' deliberate indifference in protecting Mr. Malpica from harm in violation of the Eighth Amendment to the United States Constitution.

2.     This action states an additional claim under the Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C. § 12101, *et seq.* and/or Section 504 of the Rehabilitation Act, 29 U.S.C. § 794a, for Defendants' failure to accommodate Mr. Malpica, as well as a claim arising from Defendants' gross negligence in violation of the common law of Virginia.

3.     Plaintiff seeks reasonable attorneys' fees under 42 U.S.C. § 1988 ("Section 1988") and other applicable laws.

## PARTIES

4.     Plaintiff Mario Malpica, at all times relevant to this Complaint, was incarcerated by the Fairfax County Sheriff's Office at the Fairfax County Adult Detention Center in Fairfax County, Virginia ("FCADC").

5.      Mr. Malpica is a disabled individual with a bullet lodged in his lower back and a prosthetic lower left leg.

6.      Defendant Stacey A. Kincaid ("Kincaid") is the Sheriff of Fairfax County. As such, she is the independent constitutional officer responsible for the operation of the Fairfax County Adult Detention Center ("FCADC") pursuant to Virginia law.

7.      The Fairfax County Sheriff's Office ("FSCO"), under Kincaid's direction and authority, is the local agency responsible for the operation of the FCADC.

8.      The FSCO employs and contracts individuals to provide healthcare services, including medical and mental health treatment, to inmates at the FCADC.

9.      Kincaid, by and through the deputies and jail employees who work under her authority at the FCADC, was, at all times relevant to this Complaint, responsible for the implementation of the FCADC's policies and procedures, as well as the welfare of inmates, including Mr. Malpica.

10.     Emil Ghali ("Dr. Ghali") was, at all relevant times, a medical professional employed or contracted by the FSCO to provide medical treatment to inmates at the FCADC.

11.     Dr. Ghali was a medical professional at FDADC responsible for providing medical care for inmates, as well as making determinations as to what accommodations were medically necessary. Specific to Mr. Malpica, Dr. Ghali was responsible for ensuring Mr. Malpica received reasonable accommodations during the times relevant to this Complaint.

12.     Defendant James Santmyers ("Santmyers") was the ADA Compliance Officer responsible for ensuring Mr. Malpica received reasonable accommodations during the times relevant to this Complaint.

13.     Defendant Theresa Eugene was the ADA Coordinator responsible for ensuring Mr. Malpica received reasonable accommodations during the times relevant to this Complaint.

## JURISDICTION AND VENUE

14.     This Court has federal question jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331, because this action asserts a deprivation of one or more federal constitutional rights under Section 1983.

15.     This Court has supplemental jurisdiction over Mr. Malpica's state law claim against Defendants under 28 U.S.C. § 1367(a) because the facts of the federal and state claims both occurred in this judicial district and form part of the same case or controversy.

16.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events described in this action took place within this judicial district.

## FACTS

*FSCO Policies Related to Reasonable Accommodations for Disabled Inmates*

17.     The FCSO set forth standard operating procedures for the provision of reasonable accommodations to inmates with disabilities housed at the FCADC.

18.     FCSO Standard Operating Procedure 116 ("SOP 116"), attached as Exhibit A, governed the reasonable accommodation procedure at FCADC at all times relevant to Mr. Malpica's claims.

19.     Pursuant to SOP 116, FCSO staff is required to determine what, if any, disabilities an inmate has upon his initial intake. Ex. 1 at ¶ IV.B.1.

20.     Mr. Malpica became incarcerated at the FCADC on or around May 29, 2019.

21.     That staff member is required to immediately inform the Medical Section once they identify any inmate with a disability during intake. Ex. 1 at ¶ IV.B.2.

4

22.     The Medical Section is then required to perform a screening of the inmate to determine the extent of the inmate's disability and then report its findings to the Receiving Supervisor along with a referral to the FCADC Physician. Ex. 1 at ¶ IV.B.3.

23.     Mr. Malpica underwent an initial health evaluation and assessment on May 29, 2019, during which FSCO staff noted his prosthetic left leg.

24.     The Receiving Supervisor is responsible for contacting the ADA Coordinator by phone and email so that the Coordinator can follow up with the disabled inmate to discuss the inmate's needs and accommodations. Ex. 1 at ¶ IV.B.4.

25.     On information and belief, the Receiving Supervisor did not contact Santmyers.

26.     The ADA Coordinator must meet with the disabled inmate as soon as possible after arrival at the FCADC and at least bi-weekly thereafter to ensure that accommodations and needs are being met. Ex. 1 at ¶ IV.B.9.

27.     Santmyers did not meet with Mr. Malpica until June 13, 2019.

28.     Until the ADA Coordinator has followed up with the disabled inmate, FCSO Sheriff's deputies and the FCADC medical staff are responsible for the provision of reasonable accommodations. Ex. 1 at ¶ IV.B.4.

29.     Prior to his meeting with Santmyers, FSCO Sheriff's deputies and FCADC's medical staff did not provide Mr. Malpica with any accommodations.

30.     Pursuant to SOP 116, the ADA Coordinator or a Classification Supervisor must create a Special Directive for each disabled inmate to ensure proper accommodations and care are given. Ex. 1 at ¶ IV.B.10.

31.     On information and belief, no such Special Directive was created for Mr. Malpica.

*Mr. Malpica's Previous Stays at the FCADC, Intake, and Early Incarceration*

32.     By the time Mr. Malpica became incarcerated at or near the end of May 2019,

FSCO and FCADC staff were already aware of Mr. Malpica' s disability.

33.     Mr. Malpica received medical intake health appraisals on at least three occasions

prior to his incarceration at FCADC: on January 29, 2019, March 25, 2019, and May 22, 2019,

the latter two of which specifically noted he had a prosthetic left leg.

34.     FSCO staff performed a security screening of Mr. Malpica upon his incarceration.

As part of this security screening, Sheriff's deputies strip searched Mr. Malpica.

35.     On May 29, 2019, Mr. Malpica also underwent a health evaluation and

assessment.

36.     During that assessment, RN Samuel Osafo ("Osafo") noted that he had a left leg

birth defect and had a prosthetic lower leg and foot; Osafo also indicated that Mr. Malpica

reported that he "can't sit or stand for too long."

37.     Mr. Malpica has a prosthetic left leg to compensate for the loss of his left foot, a

condition clearly within the definition of a "disability" per SOP 116. Ex. 1 at ¶ III.B, III.G.

38.     Mr. Malpica's disability affects his ability to walk and stand if uncorrected with

use of a prosthetic. This physical impairment is clearly visible, especially to a medical

professional.

39.     Despite noting his disability, Osafo did not take any affirmative steps to

accommodate Mr. Malpica.

40.     After Osafo completed the medical assessment, FSCO staff did not refer Mr.

Malpica to Dr. Ghali for additional treatment. Instead of determining what accommodations Mr.

Malpica needed, FSCO ignored his medical needs and placed him in an upstairs cell, even though such cells were less accessible.

41.     On June 10, 2019, after intake, Mr. Malpica filed a written request to speak with an ADA Compliance Officer about accommodations.

42.     Mr. Malpica did not meet with an ADA Compliance Officer, Santmyers, until June 13, 2019.

43.     Although Mr. Malpica had not yet been seen by Dr. Ghali for a disability housing accommodation determination, as required by SOP 116, Santmyers, recommended providing him a lower-tier bunk in lieu of the upper-tier bunk he had been assigned.

44.     On June 13, 2019, David Barr granted that accommodation.

45.     Santmyers referred Mr. Malpica to the Medical Section on June 13, 2019 to discuss further accommodations. Mr. Malpica did not meet with anyone in the Medical Section until June 19, 2019.

46.     In the interim, on June 16, 2019, Mr. Malpica again filed a request to speak with an ADA Compliance Officer to discuss housing accommodations, such as transfer to a medical dormitory, that would allow him all-day access to his cell.

47.     Without a housing accommodation to provide all-day access to his cell, Mr. Malpica's seating options outside of his cell were limited to the floor or metal benches, both of which were difficult and painful for Mr. Malpica due to the nature of his disability.

48.     On June 19, 2019, Osafo noted that Mr. Malpica sought a housing accommodation.

49.     On information and belief, Dr. Ghali reviewed Mr. Malpica's request for a housing accommodation but denied his request.

50.     Dr. Ghali informed Mr. Malpica he had no medical necessity for a housing accommodation.

51.     Between June 13, 2019 and July 8, 2019, Mr. Malpica spoke to Dr. Ghali, from whom he requested disability accommodations including non-slip shoes, a walking cane, and an accessible shower.

52.     Dr. Ghali denied his requested accommodations.

53.     When Mr. Malpica asked Santmyers about these accommodations, Santmyers said Mr. Malpica needed to seek such accommodations from the Medical Section.

54.     Mr. Malpica made the same accommodations requests to FCADC deputies, who informed him he needed to seek accommodations from the Classification and Medical Units.

55.     Because Dr. Ghali had denied him accommodations, Mr. Malpica was left with effectively no recourse.

56.     Mr. Malpica could not use his prosthetic leg while showering; despite this, the shower provided by FCSO to Mr. Malpica required he ascend steps to enter and did not have a grab bar, contain a shower chair or bench, or include a shower hose or wand. These are essential features of an accessible shower.

57.     Mr. Malpica did not receive non-slip shoes before July 8, 2019.

58.     Mr. Malpica did not receive a walking cane before July 8, 2019.

59.     Mr. Malpica did not receive an accessible shower before July 9, 2019.

***Mr. Malpica Falls and Sustains Serious Injury***

60.     Defendants were aware that in order for Mr. Malpica to take a shower at FCADC without the necessary accommodations, he needed to remove his prosthetic leg, place it on a

8

table outside the shower room, put a shower sock on, and hop to the shower, where he had to lean against the wall to maintain his balance.

61.     When Mr. Malpica exited the shower on or about July 8, 2019, Mr. Malpica slipped and fell on the wet floor, hitting his head on the table where he had left his prosthetic leg.

62.     Mr. Malpica sustained a head injury during the fall that required emergency hospitalization and treatment, including staples in his head to close the laceration he sustained during the fall.

63.     Mr. Malpica continued to suffer severe neck, back, and shoulder pain; dizziness; blurred vision; difficulty with light; and migraines for weeks following his release from the hospital less than 24 hours later.

64.     To this day, Mr. Malpica continues to suffer from blurred vision and headaches as a result of his fall.

65.     Mr. Malpica's fall was the direct result of Defendants' failure to provide him reasonable accommodations.

66.     On July 10, 2019, Mr. Malpica submitted another written request to speak to an ADA Compliance Officer.

67.     Mr. Malpica sought to discuss his recent fall and the resulting injury, and to renew his requests to FCSO for accommodations in an effort to prevent similar injuries in the future.

68.     Mr. Malpica met with FCADC's ADA Coordinator Theresa Eugene ("Eugene") on or about July 12, 2019.

69.     Mr. Malpica reiterated his requests for non-slip shoes, a walking cane, and accessible housing, including an accessible shower to Eugene, and explained his recent fall and resulting injuries.

9

70.     Mr. Malpica explained to Eugene that he had made multiple requests for accommodation that had gone ignored prior to his injury.

71.     After Mr. Malpica's meeting with the Eugene, Eugene requested another medical evaluation be completed to determine his eligibility for his requested accommodations.

72.     Mr. Malpica met with Dr. Ghali for a medical evaluation on July 15, 2019.

73.     During the evaluation, Mr. Malpica reiterated his need for an accessible shower, particularly in light of the symptoms he continued to suffer as the result of his fall.

74.     Mr. Malpica told Dr. Ghali that he had to remove his prosthetic leg to shower, and without a handrail, he could only remain standing in the shower by balancing his body against the wall.

75.     When Mr. Malpica did shower, he had no way to cover his staples or wrap his head to protect it from the water.

76.     Mr. Malpica told Dr. Ghali he was afraid to shower as a result and refused to shower on a daily basis.

77.     Despite Mr. Malpica expressing his clear medical need for an accessible shower and other accommodations, Dr. Ghali told Mr. Malpica he did not have a medical need for an accessible shower and further indicated that FCADC could not accommodate him regardless as the medical dorm – the only location where accessible showers were available – was at capacity.

78.     Upon information and belief, the medical dormitory at FCADC was not at capacity and could have been used to accommodate Mr. Malpica.

79.     Defendants did not provide Mr. Malpica with an alternative accommodation or discuss with him alternative accommodations that would keep him safe and make the FCADC accessible for Mr. Malpica.

80.     On July 15, 2019, Mr. Malpica requested a grievance form to grieve Defendants'
failure to provide him with reasonable accommodations.

81.     In his grievance, Mr. Malpica expressed his concern that the Eugene was not
advocating on his behalf and that "lack of medical need" failed to explain the denial of his
accommodation requests, given his clear demonstration of medical need.

82.     Mr. Malpica noted his inability to shower on a daily basis without an accessible
shower and his heightened risk of sustaining another fall and injury.

83.     On or about July 15, 2019, Mr. Malpica spoke to Eugene about Dr. Ghali's
determination that he had no medical need for any accommodation.

84.     Eugene informed Mr. Malpica that she would reach out to the Medical Section to
follow up despite the Dr. Ghali's determination.

85.     Eugene spoke to the Vera Giles ("Giles") and Marlese Clifton, the Director of
Nursing, on or about July 17, 2019. On that date, Giles indicated she planned to authorize Mr.
Malpica's relocation to a medical dorm so that he could use an accessible shower.

86.     FCSO moved Mr. Malpica to a medical dorm on July 22, 2019.

87.     This was the first date since his incarceration began that he had access to an
accessible shower.

88.     At or around this same time, new, non-slip shoes were issued to all inmates at
FCADC, including Mr. Malpica.

89.     After multiple requests during his incarceration for a walking cane, Defendants
finally provided one to him on or about July 31, 2019.

11

90.     Defendants denied Mr. Malpica access to an accessible shower and non-slip shoes for approximately six (6) weeks during his incarceration and denied him the use of a walking cane for even longer.

91.     Defendants denied Mr. Malpica all but the most limited accommodation of a lower-tier bunk until weeks after he slipped and fell on a wet floor, sustaining serious and avoidable injuries.

92.     Mr. Malpica's serious physical injuries were a direct result as a result of Defendants' failure to accommodate his disability and deliberate indifference to his welfare.

93.     Had Mr. Malpica been granted the accommodations he requested in a timely manner, he would not have fallen.

94.     Mr. Malpica was released from custody on September 3, 2019.

## COUNT I
### Civil Rights Violation of 42 U.S.C. § 1983: Eighth Amendment
### Deliberate Indifference
### *Against Ghali, Santmyers, and Eugene*

95.     The allegations in the foregoing paragraphs are incorporated as if realleged herein.

96.     Mr. Malpica is a disabled individual with a prosthetic lower left leg.

97.     Ghali and Santmyers became aware or should have become aware of Mr. Malpica's disability on or about May 29, 2019, when he became incarcerated in the FCADC. Per SOP 116, an inmate with a disability should be identified during intake, at which point the Medical Section and ADA Coordinator should be made aware of such as soon as possible.

98.     Defendants are responsible for providing accessible bathrooms, showers, and cells to individuals with disabilities incarcerated at FCADC.

12

99.     Defendants are responsible for approving and coordinating other necessary accommodations for inmates with diabilities.

100.    Between June 10 and July 8, 2019, Eugene became aware or should have become aware of Mr. Malpica's disability when she became the ADA Coordinator.

101.    Between June 10, 2019 and July 8, 2019, Defendants received and ignored multiple requests for disability accommodations made by Mr. Malpica, including his requests for non-slip shoes, a walking cane, and an accessible shower.

102.    On July 8, 2019, Mr. Malpica slipped and fell on a wet floor in FCADC, sustaining serious injuries that required hospitalization and ongoing treatment.

103.    Even after his fall, Defendants refused to authorize or provide the accommodations Mr. Malpica needed in a timely fashion, waiting for approximately two more weeks before acting on his requests.

104.    Pursuant to SOP 116, the ADA Coordinator is required to meet with the inmate as soon as possible after arrival and at least biweekly thereafter to ensure his disabilities are being accommodated.

105.    Santmyers did not meet with Mr. Malpica until June 13, 2019.

106.    Mr. Malpica did not meet with an ADA Coordinator, Eugene, again until July 12, 2019.

107.    Though Mr. Malpica consistently requested accommodations from the time he was incarcerated until the time his accommodations were granted at the end of July, 2019, his requests were denied or ignored, with the exception of being moved to lower tier housing.

108.    Defendants were deliberately indifferent to Mr. Malpica's medical needs, specifically accommodations that would alleviate Mr. Malpica's fall risks.

109.     Defendants knew of Mr. Malpica's need for accommodations but failed to provide them until weeks after he sustained a major injury.

110.     Defendants' denial of accommodations caused irreparable harm and unnecessary suffering to Mr. Malpica.

111.     Defendants' failure to properly evaluate and provide for Mr. Malpica's medical needs upon learning of his disability violated the Eighth Amendment to the United States Constitution. As a direct result of Defendants' actions, Mr. Malpica has suffered damages including, without limitation, pain and suffering; emotional, psychological, and physical distress; violation of dignity; and other pecuniary losses not yet ascertained.

112.     Defendants, by engaging in the aforementioned acts and/or omissions and/or in ratifying such acts or omissions, engaged in willful, malicious, intentional, and/or oppressive conduct, and/or acted with willful and conscious disregard of the rights, welfare, and safety of Mr. Malpica, thereby justifying the award of punitive damages in an amount to be determined at trial.

**COUNT II**
**Failure to Accomodate**
**Americans with Disabilities Amendments Act of 2008, 42 U.S.C. § 12101 *et seq.***
**Section 504 of the Rehabilitation Act, 29 U.S.C. §794a**
***Against All Defendants***

113.     The allegations in the foregoing paragraphs are incorporated as if realleged herein.

114.     Mr. Malpica is an individual born with a disability.

115.     Without a prosthetic leg, Mr. Malpica struggles to stand or walk.

116.     Mr. Malpica wears a prosthetic leg to aid him in walking and standing.

14

117.     He therefore suffers from a disability within the meaning and scope of 42 U.S.C. § 12102.

118.     On information and belief, FCADC receives money from the federal government to conduct its operations.

119.     Accordingly, Mr. Malpica is a member of the class of persons protected by the ADAAA and Section 504 of the Rehabilitation Act, which makes it unlawful for a public entity and entities receiving federal funds to discriminate against an individual with a disability, or to deny the benefits of the services, programs, or activities of a public entity or entity receiving federal funds to a person with a disability.

120.     Defendants failed to accommodate Mr. Malpica, thereby denying him the benefits of public services, programs and activities as a result of his disability by depriving Mr. Malpica full access to a shower in a manner detrimental to his health and to aids that would allow him to walk safely.

121.     Defendants' acts and omissions violated the ADA and Section 504, which prohibit discrimination, including a failure to accommodate, on the basis of disability, and protect persons such as Mr. Malpica from the type of injuries and damages set forth herein.

122.     As a direct and legal result of Defendants' actions and omissions, Mr. Malpica has suffered and continues to suffer damages including, without limitation, pain and suffering; emotional, psychological, and physical distress; and other pecuniary losses not yet ascertained.

**COUNT III**
**Common Law Gross Negligence**
***Against All Defendants***

123.     The allegations in the foregoing paragraphs are incorporated as if realleged herein.

124.    Defendants failed to comply with professional standards in the treatment, care, and supervision of Mr. Malpica during his incarceration at FCADC. Defendants' failures include but are not limited to: failing to provide timely evaluate Mr. Malpica's medical need for accommodation, failing to provide Mr. Malpica access to a shower that addressed his heightened risk of a slip and fall injury, and failing to house or provide Mr. Malpica accommodations that would keep him safe.

125.    This failure represents an utter disregard for Mr. Malpica's needs.

126.    Kincaid, in failing to appropriately supervise, review, and ensure the provision of care and accommodations to Mr. Malpica by custody and medical staff, and in failing to enforce appropriate standards and procedures that would have prevented the harm Mr. Malpica has experienced, demonstrated a complete neglect of Mr. Malpica's safety.

127.    As a direct result of Defendants' acts and omissions, Mr. Malpica suffered a serious fall that required hospitalization and continued medical care for ongoing symptoms.

128.    Defendants acted negligently and improperly, breached their respective duties to Mr. Malpica, and as a direct and proximate result, Mr. Malpica suffered injuries and damages as alleged herein.

129.    The negligent conduct of Defendants was committed within the course and scope of their employment.

130.    The aforementioned acts of individual Defendants were conducted with conscious disregard for the safety of Mr. Malpica, and were therefore malicious, wanton, and oppressive. As a result, Defendants' actions justify an award of punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff MARIO MALPICA requests that this Court enter judgment in his favor against Ghali, Santmyers, and Eugene on Count I and all Defendants on Counts II and III as follows:

(a) For compensatory, general and special damages, in an amount to be determined at trial; and in addition

(b) For punitive damages as to Counts I and III against individual Defendants in an amount to be determined at trial; and in addition

(c) For attorneys' fees, costs, and expenses incurred by Mr. Malpica in this action pursuant to statute; and in addition

(d) Award any further relief this Court deems just and appropriate under the circumstances.

**JURY DEMAND**

**PLAINTIFF MARIO MALPICA DEMANDS A TRIAL BY JURY.**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff Mario Malpica demands a trial by jury.

Dated:        April 2, 2021                    Respectfully,

_____/s/_____
Joshua Erlich, VA Bar No. 81298
Davia Craumer, VA Bar No. 87426
Katherine L. Herrmann, VA Bar No. 83203
THE ERLICH LAW OFFICE, PLLC
2111 Wilson Blvd., Ste. 700
Arlington, VA  22201

Tel:    (703) 791-9087
Fax:    (703) 722-8114
Email: jerlich@erlichlawoffice.com
          dcraumer@erlichlawoffice.com
          kherrmann@erlichlawoffice.com

18