IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MARIO MALPICA, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:21-cv-417 |
| ) | |
| STACEY A. KINCAID, *et al.*, ) | |
|     Defendants. ) | |

## MEMORANDUM OPINION

In this action, Plaintiff, by counsel, alleges in his Complaint: (i) deliberate indifference under the Eighth Amendment and 42 U.S.C. § 1983, (ii) failure to accommodate a disability under the Americans with Disabilities Act ("ADA") and Rehabilitation Act, and (iii) gross negligence under Virginia law. At issue now are three Motions to Dismiss by Defendants. Specifically, Defendant Emil Ghali (Dkt. 13), Defendants Stacey Kincaid and James Santmyers (Dkt. 15), and Defendant Theresa Eugene (Dkt. 19) have each moved to dismiss some or all of the claims asserted against them in Plaintiff's Complaint. Defendants' Motions to Dismiss have been fully briefed and argued at a hearing on August 27, 2021 and are, accordingly, ripe for disposition.

### I.

In resolving a motion to dismiss, a court "must take all of the factual allegations in the complaint as true." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, the following facts are derived from the allegations set forth in the Complaint.

- At all relevant times, beginning on May 29, 2019, Plaintiff Mario Malpica was incarcerated by the Fairfax County Sheriff's Office at the Fairfax County Adult Detention Center ("FCADC").
- Defendant Stacey Kincaid serves as the Sheriff of Fairfax County and accordingly oversees

  FCADC operations, including implementing policies and ensuring inmate welfare.
- All other Defendants were employed at FCADC in 2019:
  - Defendant Emil Ghali was a licensed physician who provided medical care to inmates at FCADC and assessed inmates to determine whether accommodations for medical conditions were necessary.
  - Defendant James Santmyers was an ADA Compliance Officer who had responsibility for ensuring that disabled FCADC inmates received reasonable accommodations.
  - Defendant Theresa Eugene was an ADA Coordinator who also had responsibility for ensuring that disabled FCADC inmates received reasonable accommodations.
- Plaintiff is disabled, suffering from two notable physical ailments: a missing lower left leg and foot and a bullet lodged in his lower back. As a result of these ailments, Plaintiff faces a number of physical limitations, including: the inability to sit or stand for extended periods, the need for a prosthetic lower leg in order to stand or walk, and pain and discomfort when sitting on certain surfaces.
- Plaintiff underwent a medical examination upon intake at FCADC, at which time FCADC staff became aware of Plaintiff's prosthesis. However, thereafter, FCADC did not follow the proscribed procedure for providing accommodations to disabled inmates, and Plaintiff did not receive any accommodations for approximately two weeks.
- On June 10, 2019, Plaintiff requested to speak with the ADA Compliance Officer, and Defendant Santmyers met with Plaintiff on June 13. Following that meeting, Defendant Santmyers recommended that Plaintiff be reassigned from an upper-tier bunk to a lower-tier bunk, an accommodation which another FCADC employee approved, and referred

Plaintiff to the Medical Section of FCADC to discuss further accommodations.

- On June 16, 2019, Plaintiff requested transfer to a medical dormitory or other housing accommodation that would allow Plaintiff all-day access to his cell, as the seating options in the FCADC, such as metal benches, caused Plaintiff pain. Plaintiff also requested non-slip shoes, a walking cane, and an accessible shower.

- Defendant Santmyers told Plaintiff that any additional accommodations would need to be approved by the Medical Section, where Defendant Ghali worked.

- Defendant Ghali met with and assessed Plaintiff and reviewed his requests. However, Defendant Ghali informed Plaintiff that he had no medical necessity for alternative housing or other accommodations, and denied Plaintiff's requests.

- Plaintiff needed to remove his prosthetic leg each time he showered. The showers in Plaintiff's FCADC unit did not include any accessible features, such as a grab bar or a bench. Accordingly, Plaintiff was required to remove his prosthesis and then hop into the shower on one leg while leaning against the wall. FCADC staff, including Defendant Ghali, were aware of Plaintiff's lack of accommodations in the showers.

- On July 8, 2019, Plaintiff slipped on the wet floor in the FCADC showers, causing Plaintiff to fall and strike his head. Plaintiff's fall and head trauma required emergency hospitalization and treatment, and Plaintiff continues to suffer from related symptoms, such as blurred vision and headaches.

- Following the fall, Plaintiff continued to request accommodations. For instance, on July 12, 2019, Plaintiff met with Defendant Eugene to discuss requests for non-slip shoes, a walking cane, and accessible housing, including an accessible shower.

- Defendant Eugene requested a follow-up medical evaluation, and Plaintiff again met with

- Defendant Ghali on July 15. Defendant Ghali explained that the FCADC medical dormitory was at capacity and again denied Plaintiff's request.

- That same day, Plaintiff filed a grievance form and again spoke to Defendant Eugene. Defendant Eugene promised to follow up with the Medical Section regarding Defendant Ghali's determination.

- On July 17, 2019, Defendant Eugene spoke to Medical Section staff. On July 22, 2019, Plaintiff's request for a housing accommodation was approved, and Plaintiff was relocated to the medical dormitory in FCADC. Plaintiff was also issued non-slip walking shoes and a cane soon thereafter.

## II.

### A. Deliberate Indifference Claim

Pursuant to Rule 12(b)(6), Fed. R. Civ. P., a complaint must be dismissed if it does not "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In order to adequately plead a claim for deliberate indifference to medical needs under the Eighth Amendment, a prisoner's complaint must satisfy both "a subjective and an objective component" of the claim. *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Under the objective component, the prisoner must be "incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical condition rises to the level of "serious" when it has been "diagnosed by a physician as mandating treatment, or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990), *cert. denied*, 500 U.S. 956 (1991). Under the subjective component, a plaintiff "must show that prison officials acted with a 'sufficiently culpable state of mind,'" namely that officials "kn[ew] of and disregard[ed] an

4

excessive risk to inmate health or safety." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016), (*citing Farmer*, 511 U.S. at 834–37). As the Supreme Court has made clear, the requisite state of mind entails "something more than mere negligence." *Farmer*, 511 U.S. at 835.

In this action, Plaintiff asserts a claim for deliberate indifference against Defendants Eugene, Santmyers, and Ghali in their individual capacities,[1] and each of those three Defendants has moved to dismiss that claim. As an initial matter, none of the Defendants contend that Plaintiff's Complaint fails to satisfy the objective prong of the deliberate indifference claim, *i.e.* that Plaintiff suffered from a serious medical need while incarcerated at FCADC. As the Complaint alleges, Plaintiff suffers from dual physical impairments of a bullet lodged in his lower back and a missing lower left leg and foot, which substantially limits Plaintiff's ability to sit and stand comfortably and necessitates the use of prosthesis to permit Plaintiff to walk. These impairments plausibly give rise to a "substantial risk of serious harm" under certain conditions, including, as the Complaint alleges, navigating a slippery shower on one leg with no assistive accommodations. *Farmer*, 511 U.S. at 834.

Instead, Defendants argue that Plaintiff's Complaint fails to allege adequately the subjective prong of the deliberate indifference claim, *i.e.* that Defendants "kn[ew] of and disregard[ed]" Plaintiff's medical needs. This argument is persuasive with respect to Defendant Eugene. No facts alleged in Plaintiff's Complaint indicate that Defendant Eugene, then an ADA Coordinator at FCADC, was aware of Plaintiff or his physical impairments prior to their initial meeting on July 12, 2019, after Plaintiff's fall. Plaintiff's briefing intimates that Defendant Eugene

---

[1] Plaintiff's Complaint indicates that Plaintiff intends to seek a monetary judgment against each Defendant in their "individual and official capacit[ies]." *See* Dkt. 1. However, state "officials acting in their official capacities" do not constitute "persons" under 42 U.S.C. § 1983 and, accordingly, that provision does not authorize suits for damages against state officials in their official capacities. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Acknowledging that precedent, Plaintiff subsequently clarified that he seeks to proceed against Defendant Eugene, Santmyers, and Ghali only in their individual capacities with respect to the deliberate indifference claim.

had access to inmate records and *may have* reviewed Plaintiff's medical information before July 12, but the Complaint does not allege that Defendant Eugene did so. Moreover, Plaintiff's Complaint also makes clear that Defendant Eugene did not disregard Plaintiff's medical needs. Following the July 12 meeting, Defendant Eugene referred Plaintiff to Defendant Ghali for a follow-up assessment regarding Plaintiff's requested accommodations. After Defendant Ghali again denied Plaintiff's accommodation requests, Defendant Eugene then conferred with other FCADC medical staff, who ultimately approved Plaintiff's desired transfer to alternative housing. Put simply, Plaintiff's Complaint does not support a contention that Defendant Eugene was negligent in the performance of her duties, let alone that the allegations with respect to Defendant Eugene met the higher degree of culpability necessary to support a claim of deliberate indifference. *Farmer*, 511 U.S. at 835. Accordingly, the Eighth Amendment claim against Defendant Eugene must be dismissed.

Plaintiff's Complaint also falls short with respect to the deliberate indifference claim against Defendant Santmyers. Plaintiff makes much of the fact that Defendant Santmyers, then an ADA Compliance Officer at FCADC, did not meet with Plaintiff until approximately two weeks after Plaintiff's intake at FCADC. However, nothing in the Complaint indicates that Defendant Santmyers was aware of Plaintiff's medical needs until Plaintiff submitted a written request for a meeting on June 10, 2019.[2] Following that request, Defendant Santmyers took steps to address Plaintiff's medical needs, including by meeting with Plaintiff, recommending a reassignment to a more accessible bunk, and referring Plaintiff to the Medical Section to discuss further accommodations. Plaintiff asserts that Defendant Santmyers could have done more, such as

---

[2] Indeed, Plaintiff's Complaint alleges that an FCADC "Receiving Supervisor" failed to follow FCADC policy and neglected to notify Defendant Santmyers about Plaintiff's potential need for accommodations following Plaintiff's intake at FCADC. *See* Complaint at ¶ 24.

advocating for Defendant Ghali to reconsider denial of Plaintiff's desired reassignment to alternative housing. However, less-than-exemplary job performance—and, indeed, even negligent job performance—cannot support a claim of deliberate indifference. *Farmer*, 511 U.S. at 835.

It is also important to note that Defendant Ghali, then a medical doctor at FCADC, ultimately assessed Plaintiff and made the decision to deny Plaintiff's requested accommodations. In general, nonmedical prison officials are entitled to rely on the medical judgments of physicians. *See, e.g., Iko*, 535 F.3d at 242 (citing *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)). And this case does not fall into one of the rare exceptions to that principle, which include: (1) failure to provide prompt access to medical care; (2) interference with a prison doctor's performance; and (3) tacit authorization of a physician's constitutional violations. *See Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990) (collecting cases). Nothing in the Complaint alleges that Defendant Santmyers: (1) denied Plaintiff access to FCADC medical staff (to the contrary, Defendant Santmyers referred Plaintiff to the Medical Section); (2) interfered with any medical treatment; or (3) had the supervisory power to expressly or tacitly authorize Defendant Ghali's actions.[3] Accordingly, Plaintiff's deliberate indifference claim against Defendant Santmyers also fails, and that aspect of Plaintiff's Complaint must be dismissed.

Plaintiff's Eighth Amendment claim against Defendant Ghali presents a much closer case. To be sure, "the subjective component [of a deliberate indifference claim] sets a particularly high bar to recovery," and a showing of mere negligence is insufficient. *Iko*, 535 F.3d at 241. In the context of a prison physician's judgment, "[m]edical malpractice does not become a constitutional

---

[3] Here, it is worth noting that the Complaint alleges that Defendant Santmyers recommended an accommodation—namely, a more accessible bunk—but that the accommodation was approved by a different FCADC employee. Federal circuit courts have held that prison officials are not deliberately indifferent when they lack the authority to authorize a treatment or course of action. *See, e.g., Thayer v. Adams*, 364 F. App'x 883, 891 (5th Cir. 2010) (holding that a defendant who had "no authority to prescribe drugs or embark on a different course of treatment" was not deliberately indifferent); *Lowe v. Davenport*, 442 F. App'x 955, 956 (5th Cir. 2011) (holding that a defendant that lacked the authority to prescribe medications was not deliberately indifferent).

violation merely because the victim is a prisoner." *Sosebee v. Murphy*, 797 F.2d 179, 181 (4th Cir. 1986). As a result, in most cases, "[q]uestions of medical judgment are not subject to judicial review." *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975). In this case, Defendant Ghali, a physician, assessed Plaintiff and made a medical judgment that Plaintiff's requested accommodations were not appropriate.

However, a plausible argument may be made that Defendant Ghali's actions, as alleged in the Complaint, rose above the level of mere negligence. The Complaint leaves no question as to Defendant Ghali's knowledge of Plaintiff's medical needs: Plaintiff alleges that he met with Defendant Ghali, who had the authority to approve accommodations for prisoners, and explained the need for an accessible shower prior to the fall on July 8, 2019. And despite the obvious risk of falling entailed in Plaintiff entering a non-accessible shower on one leg, Defendant Ghali declined to grant *any* accommodations, including simple measures such as provision of a non-slip shoe to Plaintiff. Indeed, even after the risk materialized and Plaintiff fell in the shower, the Complaint alleges that Defendant Ghali again assessed Plaintiff and declined to grant *any* accommodations. Accordingly, although it is a close case, Plaintiff's Complaint pleads a plausible claim that Defendant Ghali "kn[ew] and disregard[ed] an excessive risk to inmate health or safety." *Scinto*, 841 F.3d at 225. Accordingly, Defendant Ghali's request to dismiss the deliberate indifference claim against him must be denied.

### B. Failure to Accommodate Claim

Count II of Plaintiff's Complaint alleges that all Defendants failed to accommodate Plaintiff's disability reasonably, in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 701 *et seq.* Defendants have each moved to dismiss Count II of the Complaint, asserting, *inter alia*,

that Plaintiff's claim is time-barred. The parties agree that Plaintiff's failure to accommodate claim accrued in 2019, when all operative events took place, and that Plaintiff did not file suit until over one year later in April 2021. However, the parties disagree about which statute of limitations period governs Plaintiff's failure to accommodate claim.

Defendants contend that claims under Title II of the ADA and Section 504 of the Rehabilitation Act are governed by a one-year statute of limitations borrowed from Virginia law, and therefore Plaintiff's April 2021 filing was untimely. In *A Society Without A Name v. Virginia*, the Fourth Circuit made clear that neither Title II of the ADA nor the Rehabilitation Act contains an express limitations period, and therefore federal courts must "borrow the state statute of limitations that applies to the most analogous state-law claim." 655 F.3d 342, 347 (4th Cir. 2011). The Fourth Circuit further held that, under Virginia law, the Virginia Rights of Persons with Disabilities Act, Va. Code § 51.5–40 *et seq.*, sets forth the most analogous state law claim to claims under the ADA and Rehabilitation Act. *Id.* Accordingly, because the Virginia Rights of Persons with Disabilities Act contains a one-year statute of limitations, ADA and Rehabilitation Act claims must also be brought within one year in Virginia courts. *Id.*

By contrast, Plaintiff asserts that his failure to accommodate claim is instead governed the four-year catch-all limitations period contained in 28 U.S.C. § 1658(a), which governs "civil action[s] arising under an Act of Congress enacted after the date of the enactment of this section." Both the ADA and Rehabilitation Act were enacted before § 1658(a), and thus are not governed by the limitations period set forth therein. However, Plaintiff asserts that his failure to accommodate claim could not have been maintained under the ADA as originally enacted, and instead is only now permitted owing to the broader definition of qualifying disabilities set forth in the 2008 Americans with Disabilities Act Amendments Act ("ADAAA"). In *Jones v. R.R.*

*Donnelley & Sons Co.*, the Supreme Court held that a plaintiff's claim is governed by § 1658(a) "if the plaintiff's claim against the defendant was *made possible* by a post–1990 enactment." 541 U.S. 369, 382 (2004) (emphasis added). In that regard, Plaintiff argues that his claim was made possible by the ADAAA, and is therefore governed by § 1658(a).

Distilled to its essence, the parties' dispute turns on whether Plaintiff's failure to accommodate claim could have been brought under the original text of Title II of the ADA, which is governed by a one-year limitations period supplied by Virginia law, or was only made possible by the 2008 enactment of the ADAAA, which would implicate the four-year limitations period set forth in 28 U.S.C. § 1658(a). The crux of this dispute is the ADA's definition of a qualifying disability, namely a "physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1). Before enactment of the ADAAA, the Supreme Court held in *Sutton v. United Air Lines, Inc.* that the impact of corrective devices could be considered in deciding whether an individual had a qualifying disability, and that "a person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently 'substantially limits' a major life activity." 527 U.S. 471, 482–83 (1999).[4] However, the ADAAA explicitly rejected the holding of *Sutton*, adding, "determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as . . . medication, medical supplies, equipment, or . . . prosthetics . . ." *See* 42 U.S.C. § 12102(4)(E)(i).

With respect to this case, Plaintiff's Complaint indicates that Plaintiff has a "left leg birth defect" requiring a "prosthetic lower leg and foot." Complaint at ¶¶ 36–38. As a result, Plaintiff is unable to "stand for too long," and suffers from limited ability to stand or walk without the use of

---

[4] As an example, although the plaintiffs in *Sutton* suffered from severe myopia, that condition that did not qualify as a disability because it could be ameliorated with the use of corrective lenses. *See* 527 U.S. at 475.

a prosthetic. *Id.* Plaintiff contends that, because his impairment (*i.e.* a missing lower left leg and foot) can be ameliorated with a corrective device (*i.e.* a prosthesis), he would not have had a qualifying disability under *Sutton* before enactment of the ADAAA.

Plaintiff's contention in this regard is not persuasive. As an initial matter, the majority opinion in *Sutton* expressly rejected the dissenting Justices' concern that the majority's framework would render all users of prosthetic limbs non-disabled under the ADA. The *Sutton* majority noted that "individuals who use prosthetic limbs or wheelchairs may be mobile and capable of functioning in society but still be disabled because of a substantial limitation on their ability to walk or run." *Sutton*, 527 U.S. at 488. In the wake of *Sutton*, but before the enactment of the ADAAA, several federal circuit and district courts similarly recognized that amputees could qualify as disabled notwithstanding the use of a prosthetic limb.[5] Accordingly, Plaintiff is incorrect that, because he can stand and walk with the aid of a prosthetic lower leg, he "would not have been recognized as 'disabled' under the ADA." Dkt. 24 at 8.

Importantly, Plaintiff's Complaint makes clear that Plaintiff's physical impairments "substantially limit[] one or more major life activities" even when the ameliorative effects of the prosthesis are taken into account. 42 U.S.C. § 12102(1). Major life activities include a panoply of functions of everyday life, including "caring for oneself, performing manual tasks, walking, . . .

---

[5] For relevant circuit court cases, *see, e.g., Bartlett v. New York State Bd. of L. Examiners*, 226 F.3d 69, 80 (2d Cir. 2000) ("[A] person who has lost a leg but who is able to walk or run with the aid of a prosthetic limb is still considered disabled if that person is substantially limited . . . [in] his or her ability to walk or run in comparison to most people.") (quotation marks omitted); *Szymanski v. Rite-Way Lawn Maint. Co.*, 231 F.3d 360 (7th Cir. 2000) (reversing a district court's grant of summary judgment for a defendant on an ADA claim by an amputee plaintiff who could walk with leg prosthetics).

For relevant district court cases, *see, e.g., Finical v. Collections Unlimited, Inc.*, 65 F. Supp. 2d 1032, 1039 (D. Ariz. 1999) ("[L]oss of a limb[] generally will continue to substantially limit the major life activit[ies] of walking or running and thus the individual, albeit highly functional, will remain a disabled individual entitled to the protections the ADA accords."); *Ordahl v. Forward Tech. Indus., Inc.*, 301 F. Supp. 2d 1022, 1027–29 (D. Minn. 2004) (rejecting the contention that a Plaintiff who used a prosthetic hand was not disabled under the ADA).

[s]itting, standing, lifting, and reaching." *Weber v. Strippit, Inc.*, 186 F.3d 907, 912–13 (8th Cir. 1999). In relevant part, the Complaint alleges that Plaintiff lacked the ability to "sit or stand for too long" and that standard seating options in the prison, such as benches, were "difficult and painful" for Plaintiff use. Complaint at ¶¶ 36, 47. Plaintiff also lacked the ability to shower safely in a facility without special accommodations because Plaintiff had to remove his prosthetic leg in order to shower. *Id.* at ¶ 60. Finally, Plaintiff also requested, and ultimately received, a walking cane to aid Plaintiff's ambulation with the prosthesis. *Id.* at ¶ 89. In sum, although Plaintiff was permitted to use a prosthetic leg in prison, he still faced severe limitations in basic life activities, including sitting, standing, walking, and bathing. Accordingly, Plaintiff would have qualified as disabled under the *Sutton* framework, and thus Plaintiff's claim was not "made possible" by the ADAAA. As the Supreme Court held in *Jones*, the four-year limitations period in 28 U.S.C. § 1658(a) applies only when a claim is "made possible" by a subsequent enactment, which is not the case here. 541 U.S. at 382. Instead, Plaintiff's failure to accommodate claim is governed by the one-year statute of limitation applicable to ADA Title II claims, and must therefore be dismissed as time-barred.

### C. Gross Negligence Claim

Plaintiff's Complaint asserts gross negligence claims against each of the four Defendants under Virginia law. The Supreme Court of Virginia has made clear that gross negligence is a heightened standard of liability which constitutes "an utter disregard of prudence that amounts to a complete neglect of the safety of [an]other person." *Cowan v. Hospice Support Care, Inc.*, 268 Va. 482, 487 (2004). Stated otherwise, gross negligence "amounts to the absence of slight diligence, or the want of even scant care" which demonstrates "a form of reckless or total disregard for another's safety." *Chapman v. City of Virginia Beach*, 252 Va. 186, 190 (1996). Accordingly,

a "claim for gross negligence must fail as a matter of law" when a defendant "exercised some degree of care." *Elliott v. Carter*, 292 Va. 618, 622 (2016) (citing *Kuykendall v. Young Life*, 261 Fed. Appx. 480, 491 (4th Cir. 2008)).

Defendants Eugene, Santmyers, and Kincaid have each moved to dismiss the gross negligence claim against them. Defendant Ghali does not appear to challenge Plaintiff's gross negligence claim.[6] In any event, the Complaint pleads sufficient facts to state a plausible claim for gross negligence with respect to Defendant Ghali. As discussed *supra*, Defendant Ghali was a trained physician at FCADC with authority to grant prisoners' accommodation requests. However, despite the obvious risk to Plaintiff in using a non-accessible shower without any assistive devices, Defendant Ghali declined to grant *any* accommodations for Plaintiff, either before or after Plaintiff's fall. Accordingly, because Plaintiff's Complaint alleges that Defendant Ghali "total[ly] disregard[ed] [Plaintiff's] safety," Plaintiff's gross negligence claim against Defendant Ghali may proceed. *Chapman*, 252 Va. at 190.

By contrast, Plaintiff's Complaint fails to allege sufficient facts to give rise to a plausible claim of gross negligence against Defendants Eugene and Santmyers. First, it is unclear whether Defendant Eugene's alleged negligence can be deemed to have caused Plaintiff's injuries, given that nothing in the Complaint alleges that Defendant Eugene knew about or interacted with Plaintiff until *after* Plaintiff's fall. Second, the allegations in the Complaint make clear that Defendants Eugene and Santmyers each "exercised some degree of care." *Elliott*, 292 Va. at 622. As discussed *supra*, following Plaintiff's fall, Defendant Eugene both referred Plaintiff to Defendant Ghali for further assessment and subsequently discussed Plaintiff's case with other

---

[6] Defendant Ghali's briefing states, in cursory fashion, that "Plaintiff has failed to allege sufficient facts to state [a] claim[] under . . . Virginia common law gross negligence," but includes no argument on that point. Additionally, Defendant Ghali's Motion to Dismiss asks the Court to dismiss only Counts I (deliberate indifference) and II (failure to accommodate) of Plaintiff's Complaint. *See* Dkts. 13, 14.

13

FCADC medical staff, who ultimately approved an accommodation for Plaintiff. Defendant Santmyers also took steps to address Plaintiff's accommodation requests, including meeting with Plaintiff, recommending a new bunk assignment, and referring Plaintiff for a Medical Section evaluation. Because neither Defendant Eugene nor Defendant Santmyers totally disregarded Plaintiff's medical needs, Plaintiff's "claim for gross negligence [against them] must fail as a matter of law." *Id.*

Finally, Plaintiff's Complaint does not allege that Defendant Kincaid was personally involved in any relevant decision-making with respect to Plaintiff at FCADC. However, Defendant Kincaid is the Sherriff of Fairfax County, and Plaintiff contends that Defendant Kincaid is liable under a theory of *respondeat superior* for the actions of the other Defendants, employees of the Fairfax County Sherriff's Office at FCADC. Accordingly, because the gross negligence claim against Defendant Ghali will proceed, it is necessary to assess whether Defendant Kincaid may be found vicariously liable for Defendant Ghali's alleged negligence.

As an initial matter, Virginia courts have recognized that elected public officials such as sheriffs may be held liable for the torts of subordinate employees. *See, e.g., First Virginia Bank-Colonial v. Baker*, 225 Va. 72, 80–81 (1983). Defendant Kincaid does not dispute this general point, but argues that she may not be found vicariously liable because Plaintiff's claim against Defendant Ghali should properly be construed as a medical malpractice claim under the Virginia Medical Malpractice Act ("VMMA"). *See Gedrich v. Fairfax Cty. Dep't of Fam. Servs.*, 282 F. Supp. 2d 439, 477 (E.D. Va. 2003) (observing that all common law "tort claims based on the provision of health care services against health care providers are considered malpractice claims and are governed by the [VMMA]") (citing Va. Code § 8.01–581.1). In this regard, Defendant Kincaid notes that the VMMA applies to "health care providers" ("HCPs"), which are defined as

14

any "person, corporation, facility or institution licensed by th[e] Commonwealth [of Virginia] to provide health care or [related] professional services." Va. Code § 8.01-581.1.

Defendant Kincaid contends that she may not be deemed liable for an employee's act of medical negligence because she does not qualify as a health care provider under the VMMA. However, Defendant Kincaid's contention is rebutted by the fact that Virginia courts have imposed liability against non-HCP employers based on the underlying medical malpractice liability of HCP employees. For example, in *Schwartz v. Brownlee*, the Supreme Court of Virginia affirmed a judgment imposing *respondeat superior* liability against a non-HCP corporation based on the malpractice liability of a licensed physician employee. 253 Va. 159 (1997). *See also Taylor v. Mobil Corp.*, 248 Va. 101 (1994) (affirming, in relevant part, a judgment which imposed *respondeat superior* liability against the Mobil Corporation based on the malpractice of a physician employee).[7] Accordingly, Virginia caselaw rebuts the contention that Defendant Kincaid may not be found liable for the negligence of Defendant Ghali, and the motion to dismiss the gross negligence claim with respect to Defendant Kincaid must be denied. Development of the factual record will clarify whether Defendant Kincaid and Defendant Ghali had a sufficient agency relationship to sustain a finding of vicarious liability.[8]

### III.

For reasons stated in this Memorandum Opinion, Defendants' Motions to Dismiss must be

---

[7] Defendant Kincaid cites just one unpublished federal district court decision for the proposition that the "VMMA does not recognize respondeat superior liability." *See Costine v. Correct Care Sols., LLC*, No. 2:19CV53, 2019 WL 2775491, at *6 (E.D. Va. July 2, 2019). However, that decision is unpersuasive and squarely rebutted by authority from the Supreme Court of Virginia.

[8] "Four factors enter into determination of the question whether a master-servant relationship exists within the contemplation of the doctrine of *respondeat superior*, (1) selection and engagement of the servant, (2) payment of compensation, (3) power of dismissal, and (4) power of control. The first three factors are not essential to the existence of the relationship; the fourth, the power of control, is determinative." *Hadeed v. Medic-24, Ltd.*, 237 Va. 277, 288 (1989) (citation omitted).

granted in part and denied in part. Specifically, Count I (deliberate indifference) must be dismissed with respect to Defendants Santmyers and Eugene, Count II (failure to accommodate) must be dismissed with respect to all Defendants, and Count III (gross negligence) must be dismissed with respect to Defendants Santmyers and Eugene. However, Plaintiff may proceed in this action on the deliberate indifference claim against Defendant Ghali and the gross negligence claim against Defendants Ghali and Kincaid. An appropriate Order will issue separately.

The Clerk of Court is directed to send a copy of this Memorandum Opinion to all counsel of record.

Alexandria, VA
February 18, 2022

/s/
_____
T. S. Ellis, III
United States District Judge